EDGAR R. STIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LAWRENCE C. STIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 603, 609, 604. Promulgated April 17, 1945.

*Harry Silverson, Esq.,* and *Charles H. Meyer, Esq.,* for the petitioners.

*Arthur Groman, Esq.,* for the respondent.

## OPINION.

OPPER, *Judge*: The disposition of this proceeding seems to us to be governed by *Edward Mallinckrodt, Jr.*, 2 T. C. 1128. There, equally, the petitioner was the beneficiary of a trust created for him by another, but he could obtain the trust income by directing the remaining trustees to that effect. His failure to make that direction with the consequent absence of any payment to him was relied upon as requiring the application of section 162, taxing trust income to the trust if undistributed. There were other aspects of control in the petitioner similar to those here, but our decision may be summed up by the statement in the opinion that:

Certainly with such powers and rights in and to the trust corpus, and particularly to the income produced, there can be no question that if petitioner were the grantor he would be taxable on the income under section 22 (a), *Helvering* v. *Clifford, supra,* and petitioner makes no claim to the contrary. The fact that the powers and rights are not the retained powers and rights of a grantor but were received by the petitioner as beneficiary of the trust and by grant from his father makes them no less substantial. * * *

The case was affirmed (C. C. A., 8th Cir.), 146 Fed. (2d) 1:

* * * because the power of petitioner to receive this trust income each year, upon request, can be regarded as the equivalent of ownership of the income for purposes of taxation. * * * It seems to us, as it did to the majority of the Tax Court, that it is the possession of power over the disposition of trust income which is of significance in determining whether, under section 22 (a), the income is taxable to the possessor of such power, and that logically it makes no difference whether the possessor is a grantor who retained the power or a beneficiary who acquired it from another. See *Jergens* v. *Commissioner, supra,* at p. 498 of 136 F. (2d). Since the trust income in suit was available to petitioner upon request in each of the years involved, he had in each of those years the "realizable" economic gain necessary to make the income taxable to him. * * *

Certiorari has been denied 324 U. S. 871.

In one aspect the present facts vary slightly from those in the *Mallinckrodt* case. Here, as we read the trust instrument, it was unnecessary for either petitioner to make a request in order for the income from his trust to be paid to him. Only by the affirmative action of the petitioners as cotrustees in exercising their discretion to pay the income to their children would there be the necessary conduct resulting

in a failure on the part of the respective petitioners to receive the entire trust income. That they undertook in the years before us to engage in that affirmative act cannot, it seems clear, place these circumstances in any stronger light than where the failure of the beneficiary to take action has a similar effect. "* * * it does not matter whether the permission is given by assent or by failure to express dissent." *Corliss* v. *Bowers*, 281 U. S. 376.

The only action which could deprive either petitioner of his respective right to the trust income was thus the concurrent action of both as reciprocal trustees in directing the income elsewhere. If the trustees, including in each case one of the petitioners, could not agree, the discretion under New York law could not be exercised. *In re Johnson's Will*, 123 Misc. Rep. 834; 207 N. Y. S. 66; *In re Campbell's Will*, 13 N. Y. S. (2d) 773; affd., 26 N. Y. S. (2d) 491. And in the absence of that discretionary action the income would be left to the destination directed by the trust instrument and necessarily find its way to the respective petitioner as "primary beneficiary." The failure of either to concur was all that was necessary for him to obtain the income from his own trust. We need not, accordingly, resort to the reciprocal trust theory presented by the *Lehman* case,[1] for the conclusion that it was within the unhampered power of each petitioner to obtain the current income of the trust if that suited his purpose. See also *Edward E. Bishop*, 4 T. C. 862.

Strenuous effort is made to satisfy us that, in spite of the express direction for the distribution of income, the true purpose of the trust was to benefit the grandsons, rather than or at least equally with the petitioners. But the whole tenor of the instrument contradicts any such conclusion, aside from the provisions dealing with income. Each trust is limited to the life of the respective primary beneficiary. Upon the termination of the trust no provision is made for the grandsons except in the event that the primary beneficiary shall have failed to make a valid testamentary disposition as to his trust. Not only are the two primary beneficiaries appointed the only two trustees, but if they resign they may designate successor trustees. And, finally, the duty of the trustees to account is specified to be only to the primary beneficiary during his life. Thus we can not view the trust as establishing an interest in the grandsons paramount to that in petitioners, of which a court of equity would take cognizance. Cf. *Phipps* v. *Commissioner* (C. C. A., 2d Cir.), 137 Fed. (2d) 141; see *Commissioner* v. *Irving Trust Co. (Beugler Estate)* (C. C. A., 2d Cir.), 147 Fed. (2d) 946; *Morsman* v. *Commissioner* (C. C. A., 8th Cir.), 90 Fed. (2d) 18; certiorari denied, 302 U. S. 701; *Greene* v. *Greene,* 125 N. Y. 506; 26 N. E. 739.

---

[1] *Allan S. Lehman et al., Executors*, 39 B. T. A. 17; affd. (C. C. A., 2d Cir.), 109 Fed. (2d) 99; certiorari denied, 310 U. S. 637.

But even were the evidence stronger on this point, it would not suffice to distinguish the *Mallinckrodt* case, where it was recognized that "the grantor's intention in creating the trust was primarily to provide for petitioner's children and grandchildren," and that "the powers conferred upon the petitioner and upon the trustees over the disposition of the income and corpus of the trust were not granted with the thought that they would be exercised for the sole use or benefit of petitioner."

Finally, the fact that petitioners chose to make their sons the beneficiaries from year to year can not alter the significance of their command over the income. The situation each year was as though the petitioner-beneficiary determined to assign to the designated grandson his share of the trust income, prior to distribution, without to any extent releasing his basic interest in the trust or his opportunity to grant or withhold similar gifts in the years to come.

* * * By §§ 161 (a) and 162 (b) the tax is laid upon the income "of any kind of property held in trust," and income of a trust for the taxable year which is to be distributed to the beneficiaries is to be taxed to them "whether distributed to them or not." In construing these and like provisions in other revenue acts we have uniformly held that they are not so much concerned with the refinements of title as with the actual command over the income which is taxed and the actual benefit for which the tax is paid. See *Corliss* v. *Bowers*, 281 U. S. 376; *Lucas* v. *Earl, supra; Helvering* v. *Horst, supra; Helvering* v. *Eubank, supra; Helvering* v. *Clifford, supra.* It was for that reason that in each of those cases it was held that one vested with the right to receive income did not escape the tax by any kind of anticipatory arrangement, however skillfully devised, by which he procures payment of it to another, since, by the exercise of his power to command the income, he enjoys the benefit of the income on which the tax is laid. [*Harrison* v. *Schaffner*, 312 U. S. 579, 581.]

We are of the opinion that respondent correctly charged petitioners with the trust income.

Reviewed by the Court.

*Decisions will be entered for the respondent.*

VAN FOSSAN, *J.*, dissents.

———

HARRON, *J.*, dissenting: Respondent has taxed the income of each of the Lena Stix trusts to each petitioner, respectively, although the income was received by other persons who were income beneficiaries named in each trust instrument. The majority have concluded that the income of the trusts is taxable to petitioners under section 22 (a), and that conclusion carries with it the further conclusion that section 162 (b) does not apply in the taxation of the income of these trusts. The conclusion by the majority has been made under the *egis* of *Corliss* v. *Bowers*, 281 U. S. 376, and *Helvering* v. *Clifford*, 309 U. S. 331. I use the word *egis* rather than the word *rationale*, advisedly, because the reasoning of these cases can not be applied to the Lena Stix trusts.

That is because the facts, which must be distilled from the particular income clause of each Lena Stix trust, are not the facts which were found in the trusts created by Corliss and by Clifford. Corliss and Clifford were taxed upon the income of property which each put into trusts but over which each retained so much control and received such economic benefit that the framework of the trusts did not insulate each one from his original ownership of the income. A recent case, the *Mallinckrodt* case, applied the reasoning of *Corliss* and *Clifford* cases in taxing the income of a trust created by a father to the son who was the sole beneficiary of remainder income under the trust, and who, as an individual, was given the right to take the income or to let it be added to principal over which he was given also a power of appointment. Under those facts it was considered proper to tax the income from A's property, transferred to a trust, to B, a beneficiary of the trust because B could not successfully escape the ownership of the income by not taking it into his possession. It was B's income whether or not he asked for it, as the trust was constructed. The *Mallinckrodt* case is the authority relied upon by the respondent and by the majority as giving legal sanction to taxing the income in question to petitioners.

It is an established rule that each case must be decided upon its own particular facts, and, where the issue relates to the taxation of trust income, each trust is entitled to receive a fair construction, free from stretching one written clause into the pattern of the written clause found in some other trust instrument previously analyzed in some other case. The Lena Stix trusts contain an income clause which is entirely different from the income clause in the Edward Mallinckrodt, Sr., trust. In these proceedings, the taxpayers are entitled to have the special trusts involved considered upon their special terms. There can be no reconciliation whatever between the interpretation which the majority gives to the income clause in each Stix trust and the interpretation which I feel should be given. The majority view, in my opinion, is tantamount to a conclusion that Lena Stix did not create any trusts at all, but gave property to each petitioner; and that the form of a trust was a sham. In effect, the majority view deletes from the Lena Stix trusts, for all practical purposes, the word "Trustees" following the names of petitioners in the trust instruments, and the words in the fifth clause, "The Trustees hereby accept the trusts and agree to execute the same to the best of their ability."

In the *Mallinckrodt* case the trustees of the trust acted under the trust in accumulating the remainder current income. But in each year Mallinckrodt, Jr., was the only person entitled to receive that income if it was distributed. Therefore, he owned it, and he could not avoid tax on the income by resting upon a provision in the trust to the effect that the trustees were required to pay the income to him only if he

asked them to do so. The courts which have considered that trust have held that for tax purposes the provision in the trust which made distribution of certain income by the trustees dependent upon a request from the sole beneficiary was a nullity where the incidence of the tax upon such income came into question, in so far as the taxpayer's argument that it saved him from tax was concerned. Under such provisions, the trust income was taxable to the named beneficiary and not to the trust. While the Circuit Court which considered the Mallinckrodt, Sr., trust adopted the view that the tax should be imposed under section 22 (a) rather than under section 162 (b), a technical choice of alternative statutory provisions, an argument had been made that the remainder income could be classed as income "to be distributed currently" and taxed under section 162 (b) to Mallinckrodt, Jr., and I think the practical result of the conclusion of the Circuit Court was to do just that, even though the Circuit Court put its holding under section 22 (a) rather than under section 162 (b). .

I think there is good cause for caution in selecting the *Mallinckrodt* case as the authority for the decision of the issue presented here under the Lena Stix trusts. In fact, I think these trusts are distinguishable from the Mallinckrodt trust, and the income in question should not be taxed to petitioners under section 22 (a). Furthermore, the reasons which were given for taxing the undistributed income from the Mallinckrodt trust to Mallinckrodt, Jr., under section 22 (a) can not be found in these trusts. Trusts such as the Lena Stix trusts have not been analyzed and considered before. These proceedings should be considered upon their own special trusts, giving rise to their own special facts.

In each trust created by Lena Stix the terms are identical except for names. There are two trustees under each trust. Lena Stix transferred property to the trustees under one trust for the following use and purpose, among others:

(1) To receive the income therefrom * * * during the life of Edgar R. Stix, one of the sons of the Grantor, hereinafter referred to as the "Primary Beneficiary", and to pay over said income to the Primary Beneficiary; except that the Trustees may, in their sole and exclusive discretion, at any time or from time to time, pay over all or any of said income to Robert L. Stix and Donald Stix, the sons of the Primary Beneficiary, or either of them.

In the other trust the provision is the same, except that the name of Lawrence C. Stix appears as the primary beneficiary, and the names of his sons are set forth, namely, Lawrence C. Stix, Jr., and Edgar R. Stix, 2nd.

The majority view stresses a familiar rule, which is followed under the laws of New York, that, where there is more than one trustee and they are given discretionary powers, they must all agree in a decision

made under such powers; one can not act alone. But to state that rule here is only to describe what the trustees were authorized to do under a Lena Stix trust. Bearing the rule in mind, the above clause may be paraphrased, as follows: The trustees are to pay the income to the primary beneficiary, except that they may pay the income to Robert L. Stix and Donald Stix, or either of them, upon their agreement that the income should be so paid.

The authorization to the trustees under each Lena Stix trust to pay the income to persons other than the primary beneficiary if the trustees should agree that such disposition should be made constitutes much more than a slight variance in the facts here from those in the *Mallinckrodt* case. It is error and a tortured construction to construe the above quoted clause in a Lena Stix trust as saying the same thing as was said in the income clause in the Mallinckrodt, Sr., trust. In the trust for the life of Robert L. Stix the trustees were to pay him the trust income unless they agreed in their discretion to pay it to other named beneficiaries. The same was true under the trust for the life of Lawrence C. Stix. The distribution of trust income was not made dependent upon the request of a primary beneficiary. It was not so provided in the Lena Stix trusts. The grant of the discretionary power to the trustees to distribute income to others did not write into the Lena Stix trusts any such provision, not even indirectly.

There are, however, very important variances in the Stix trusts from the Mallinckrodt trust. One is that income had to be distributed and could not be accumulated. A second is that under each trust two persons (four in all) were named to whom the trustees were authorized to distribute income under the exercise of their sole discretion, other than the two primary beneficiaries. A third is that the trustees were given discretionary powers over the distribution of the principal of each trust during the existence of each trust. The trustees held the trust corpus for the following use:

(2) To pay over to the Primary Beneficiary, or to either or both of the aforesaid sons of the Primary Beneficiary, at any time or from time to time, such portions of the principal of the trust, if any, as the Trustees in their sole discretion may consider proper.

The majority view is, in substance, that under clause (1), the income clause, an exercise of the discretionary power by the two trustees was not an act by fiduciaries at all, but was an act of one of the trustees, namely, the one who was named as a primary beneficiary; and that he acted in his individual capacity, and that he exercised powers of ownership of trust income; and that the payment of the trust income to the other named beneficiaries was not a distribution by the trustees, but was in reality a gift or an assignment by the primary beneficiary of his own income. Thus, the majority view makes a nullity of the grant

of fiduciary powers under clause (1) of each trust, but says nothing about the fiduciary powers given to the trustees under clause (2). Does this contention mean that a distribution of *principal* to a son or sons of the primary beneficiary under clause (2) is an act of the trustees, but that a distribution of *income* to a son or sons of the primary beneficiary under clause (1) is not an act of the trustees, but, instead, is an act of the primary beneficiary, himself? It can not be held that under clause (1) it is an impossibility for the trustees to act in a fiduciary capacity and that under clause (2) it is a possibility, the two clauses having the same quality as authorizations to the trustees from the grantor of the trusts.

There is either logical inconsistency in the view expressed by the majority, or the majority view is that Lena Stix did not create any trusts, and petitioners were not trustees, but each petitioner was the donee of property purportedly placed in a trust for the duration of his life.

The evidence in these proceedings shows that each trustee acting under the Lena Stix trusts was independent of the other, and was active, and was not complacent and amenable to his cotrustee.

We have here two trusts created by the mother of petitioners out of her own property. The trustees named in each trust accepted the trust and agreed to exercise it to the best of their ability. In the taxable years they were able to and did exercise the discretionary power they had over the income under clause (1), and they distributed the income to grandsons of the grantor. Thus, they carried out the directives of the grantor; they carried out the trusts. Those who received the income were named as beneficiaries of income if the trustees in their discretion should elect to pay it to them. The income of the trusts was "to be distributed currently" (see section 161 (a) (2)), and it should be taxed under section 162 (b). Under section 162 (b) the income is taxable to those who received it, and not to petitioners, who did not receive it directly or indirectly.

The income should not be taxed under section 22 (a) to petitioners as individuals. They did not own the trust property, under either trust, and they did not own the income by virtue of any personal dominion and control equal to ownership. The facts under the Lena Stix trusts differ greatly from the facts under the Corliss and Clifford trusts, and the Mallinckrodt trust. The question presented in these proceedings is not controlled by the *rationale* of the *Corliss* and *Clifford* cases. In the *Mallinckrodt* case, Mallinckrodt, Jr., had a "power * * * to receive * * * trust income each year, upon request," which was the equivalent of ownership of the income for purposes of taxation. In these proceedings neither Edgar R. Stix nor Lawrence C. Stix had such "power to receive income upon request." Each one,

under each trust, had only a right to receive income subject to being divested of the right by the joint action of two trustees who were given the authority to pay the income to other persons, in their sole discretion.

ARUNDELL and BLACK, *JJ.*, agree with this dissent.